UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT H.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

6:21-cv-06263-EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Robert H. ("Plaintiff") brings this action pursuant to Title II and Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits.  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Dkt. 12; Dkt. 14).  For the reasons discussed below, Plaintiff's motion (Dkt. 12) is denied and the Commissioner's motion (Dkt. 14) is granted.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on September 17, 2015.[1] (Dkt. 9 at 123, 135, 324-36).[2]  In his applications, Plaintiff alleged disability beginning May 1, 2012.  (*Id.*).  Plaintiff's application was initially denied on January 28, 2016.  (*Id.* at 123-46).  At Plaintiff's request, a hearing was originally held before administrative law judge ("ALJ") Anthony Dziepak on May 17, 2018.  (*Id.* at 68-06).  On July 6, 2018, the ALJ issued an unfavorable decision related to Plaintiff's claims.  (*Id.* at 150-64).  Plaintiff then requested review by the Appeals Council, which the Council granted remanding the matter to a different ALJ based on the Appointment Clause defect raised by Plaintiff.  (*Id.* at 171-74).

On May 19, 2020, Plaintiff appeared for a hearing before ALJ Michael W. Devlin, who issued an unfavorable decision on June 30, 2020.  (*Id.* at 21-34, 42-67).  Plaintiff then requested review by the Appeals Council, which the Council denied on February 26, 2021, making the ALJ's determination the final decision of the Commissioner.  (*Id.* at 7-12).

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

[2]     The record also contains Plaintiff's prior application for DIB filed on July 9, 2014, in which he alleged disability beginning on December 24, 2011.  (Dkt. 9 at 107, 120, 317-23).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

II.    __Disability Determination__

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).[3]  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1529), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

---

[3]    Because DIB and SSI regulations mirror each other, the Court will just reference the DIB regulations in its analysis.

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## **DISCUSSION**

### I.    **The ALJ's Decision**

In deciding whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation analysis set forth in 20 C.F.R. § 404.1520 and determined that Plaintiff met the insured status requirements of the Act through September 30, 2016. (Dkt. 9 at 23). At step one of the analysis, the ALJ opined that Plaintiff had not engaged in substantial gainful work activity since May 1, 2012, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from several severe impairments: right rotator cuff tendonitis, status post right shoulder labral tear rupture; status post right shoulder surgeries x 2; osteoarthritis of the right shoulder; obesity; bipolar disorder, and anxiety disorder. (*Id*. at 24). The ALJ also determined that Plaintiff's status post right

knee patellar dislocation, left shoulder dysfunction, plantar fasciitis, psoriasis, diabetes mellitus, type II, hypertension, hyperlipidemia, and attention deficit hyperactivity disorder (ADHD) were all non-severe impairments. (*Id*.).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 24-). Before proceeding to step four, the ALJ concluded that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that he could

> occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, and stand and/or walk about six hours in an eight-hour day. He could sit about six hours in an eight-hour day. He could occasionally push and/or pull 20 pounds and frequently climb ramps and/or stairs, balance, stoop, kneel, and crouch. He should never crawl or climb ladders/ropes/scaffolds. He could occasionally reach, handle, and finger with the dominant right upper extremity. He could avoid concentrated exposure to extreme cold. He could understand, remember, and carry out simple instructions and tasks. He could occasionally interact with co-workers and supervisors. He should have little to no contact with the public.

(*Id*. at 26).

At step four, the ALJ found that Plaintiff had been unable to perform any past relevant work. (*Id*. at 32). Considering Plaintiff's age, education, and work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy, such as fruit distributor, mail clerk, and counter clerk that Plaintiff could perform. (*Id*. at 33). As a result, the ALJ concluded that Plaintiff was not disabled from the alleged onset date of May 1, 2012, through the date of the ALJ's decision. (*Id*. at 34).

## II.    <u>The ALJ Determination is Supported by Substantial Evidence.</u>

Plaintiff argues that the ALJ failed to properly apply the treating physician rule when he evaluated the opinions of his treating psychiatrists, and, as such, committed an error that warrants remand solely for calculation of benefits.[4]  (Dkt. 12-1 at 20-31).  The Court disagrees.

Because Plaintiff's claims were filed before March 27, 2017, the ALJ was required to apply the treating physician rule, pursuant to which the opinion of a treating source is given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  If the ALJ declines to afford controlling weight to a treating physician's opinion, he then must consider various factors to determine how much weight to give to the opinion.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004).  These factors, also known as *Burgess* factors, include the frequency, length, nature, and extent of treatment; the amount of medical evidence supporting the opinion; the consistency of the opinion with the remaining medical evidence; and whether the physician is a specialist.  *Id.*; *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).  An ALJ's failure to explicitly apply the factors when assigning less than controlling weight to an opinion of a treating physician generally constitutes an error requiring remand, *see*

---

[4]    The Court will not address Plaintiff's physical RFC because he did not raise an issue with the ALJ's evaluation of his physical impairments.

*Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999), unless a searching review of the record demonstrates that the ALJ has provided "good reasons" for his weight assessment. *Schillo v. Kijakazi*, 31 F.4th 64, 78-79 (2d Cir. 2022) (procedural error not to explicitly consider each *Burgess* factor was harmless when the ALJ applied the substance of the treating physician rule and articulated "good reasons" for affording little and partial weight to the conclusions of plaintiff's physicians that were inconsistent with their longitudinal records and other evidence of record); *see also Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (an ALJ's failure to explicitly apply the *Burgess* factors when assigning weight to opinion evidence constitutes harmless error if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed") (quotations omitted).

In the instant matter, the ALJ evaluated several medical opinions contained in the record when arriving at Plaintiff's RFC. Plaintiff takes issue with the evaluation of the opinions of his treating psychiatrists—Ronald Spurling, M.D. ("Dr. Spurling") and Kang Yu, M.D. ("Dr. Yu"), which the ALJ afforded limited weight. (Dkt. 9 at 32; Dkt. 12-1 at 20-31). Plaintiff argues that the ALJ failed to provide controlling weight to their opinions and erred in not explicitly applying each *Burgess* factor when he afforded them limited weight. (Dkt. 12-1 at 23-21).

The Court finds that although the ALJ did not explicitly identify each factor in his analysis, his reasons for assigning both psychiatrists' opinions limited weight were clear and supported by the record. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)

("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."); *see also Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (the ALJ provided sufficient reasons for the weight assigned to the treating physician opinion even when he did not explicitly consider the *Burgess* factors).  Because it is the ALJ who is tasked with evaluating medical evidence, he is free to assign less than controlling weight to the opinion of a treating physician where, as here, the opinion is not supported by the record.  *See Halloran*, 362 F.3d at 32.  Here, the ALJ sufficiently articulated his reasons for the weight assigned to both psychiatrists' opinions when he considered Dr. Yu's treating relationship with Plaintiff and discussed the inconsistency of the opinions with the psychiatrists' own examination notes and the other medical evidence contained in the record—two factors that the regulations specifically instruct the ALJ to consider when weighing a treating physician's opinion.  *See Holler v. Saul*, 852 F. App'x 584, 586 (2d Cir. 2021) ("[W]here . . . the ALJ provided a detailed explanation for her decision to give less than controlling weight to a treating physician's opinions, which we can easily understand from a review of the [record], the ALJ's failure to explicitly discuss each of the four factors . . . is not *per se* reversible error.").  Accordingly, the Court finds no reversible error in the ALJ's consideration of the applicable factors in evaluating both psychiatrists' opinions.

The Court also finds no error in the ALJ's evaluation of Dr. Spurling and Dr. Yu's findings and his overall assessment of Plaintiff's mental RFC.  Specifically, the ALJ

properly determined that the limitations Dr. Spurling identified in his mental health evaluation were inconsistent with his contemporaneous records of Plaintiff's examinations, as well as the objective medical evidence contained in the record.[5] *See Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (no error in declining to afford controlling weight to the opinion of plaintiff's treating physician because it was inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and plaintiff's reported activities of daily living). It should be noted that the ALJ acknowledged Plaintiff's long history of depression and anxiety in his analysis and explicitly discussed Dr. Spurling's continuous treatment that he provided to Plaintiff since April 2014. (Dkt. 9 at 29-31). However, despite the lengthy treating relationship with Plaintiff, the nature of the limitations that Dr. Spurling identified in his opinions was not supported by his own treatment records.

---

[5]     In addition to his August 29, 2016, mental health evaluation discussed below, the record contains several other opinions issued by Dr. Spurling during his treatment, in which he indicated that: (1) Plaintiff was limited in understanding and memory, sustained concentration, persistence, social interactions, and adaptions (*id*. at 724); (2) Plaintiff's impairments would continue unabated if he were to completely abstain from the use of drugs or alcohol (*id*. at 856); (3) Plaintiff would be unable to perform jury duty due to his significant agitation caused by issues with mood and anxiety experienced under stress (*id.* at 830); and (4) there had been no changes in Plaintiff's limitations since August 19, 2016—the day Dr. Spurling completed Plaintiff's original mental health evaluation (*id*. at 867). Although the latter opinion mentions August 19, 2016, it appears that Dr. Spurling mistakenly was referring to August 29, 2016—the date he completed Plaintiff's mental health evaluation. (*Id*.).

For instance, in his August 29, 2016, mental health evaluation, Dr. Spurling indicated that Plaintiff was markedly limited in his ability to maintain regular attendance and tolerate customary work pressures, moderately limited in his ability to communicate clearly and effectively, and work in coordination and proximity to co-workers and the general public, that he would be absent from work more than four days per month, and would be restricted to working no more than four hours per day or twenty hours per week due to his limitations.  (Dkt. 9 at 791-94).  However, these findings were inconsistent with Dr. Spurling's contemporaneous treatment notes that demonstrated Plaintiff's mostly unremarkable mental health examinations when he exhibited normal thought process, intact attention, concentration, and memory, alert and oriented behavior, and fair judgment. (*Id*. at 565, 573, 710, 719, 745, 751).  As any claimant having mental health limitations, Plaintiff was suffering from the cyclical nature of his symptoms early into his treatment when he was having "good" and "bad days" while going through the adjustment of his medications until the proper medication and the dosage was found to successfully control his disabling symptoms of anxiety, depression, and bipolar disorder.  While Dr. Spurling's notes clearly demonstrate that in the beginning of his treatment Plaintiff experienced some paranoia and preoccupations, these symptoms quickly weaned down shortly after Plaintiff started treatment to the point where Dr. Spurling began documenting Plaintiff's normal thought process without illogical thinking, delusions, hallucinations, paranoia, or preoccupations.  (*Id*. at 565, 570, 576, 701, 704, 706, 708, 710, 713, 716, 751).  Plaintiff's

anger outbursts, depression, and social anxiety, while initially reported and noted by Dr. Spurling on examination, also dramatically subsided during treatment to the point where Plaintiff no longer reported them, and, instead, stated that he was doing "really good," or that "things were great" when asked about his symptoms. (*Id*. at 711-13, 717, 743, 749, 796, 809, 821). Moreover, well into his treatment, Plaintiff explicitly denied having any episodes of anger outbursts or depression, and reported improvement of his mood, sleep, daily activities, as well as the increase in social interactions with friends, which he attributed to the right combination of his psychotropic medications prescribed by Dr. Spurling. (*Id*. at 574, 575, 577, 706, 708, 711, 713, 714, 717, 719, 749, 751, 796, 809, 821, 824). The significant improvement in Plaintiff's symptoms was also demonstrated by the frequency of his visits with Dr. Spurling when he first sought his help on a consistent basis until he took a seven-month break before visiting Dr. Spurling again, and when he, upon return, reported dramatic changes that he made to his lifestyle after having been diagnosed with type II diabetes that improved his overall mental health symptoms and social interaction with others, increased his workouts, allowed him to self-discontinue one of the most potent psychotropic medications he was taking, and made him even consider getting a job. *See Snyder v. Comm'r of Soc. Sec.*, No. 22-277-CV, 2023 WL 1943108, at *3 (2d Cir. Feb. 13, 2023) ("the regulations explicitly state that treatment and methods used to alleviate symptoms, and how symptoms affect patterns of daily living, are relevant to the ALJ's assessment").

After taken a lengthy break in mental health treatment following Dr. Spurling's retirement, Plaintiff started seeing Dr. Yu, who, after seeing Plaintiff on only four occasions, opined that due to his bipolar and social anxiety disorders, Plaintiff was 25% or more limited in his ability to accept criticism from supervisors, work in coordination or proximity to co-workers, interact with the general public, concentrate and perform simple tasks, tolerate customary work pressures, and perform at a consistent pace. (*Id*. at 984-89). Dr. Yu determined that Plaintiff would be absent from work for four days, and that he would be best suited for an early morning job with minimal social interaction that would last only an hour or two. (*Id*. at 987-88).

The ALJ afforded Dr. Yu's opinion limited weight because even though he was Plaintiff's treating psychiatrist at the time, Dr. Yu's conclusions overstated Plaintiff's limitations in attention and concentration, as well as social interaction. (*Id*. at 32). The ALJ's finding was proper particularly because the limitations in Plaintiff's ability to tolerate work pressures were self-reported by Plaintiff during his visits with Dr. Yu and because Dr. Yu noted that Plaintiff appeared symptom-free with organized and directed thoughts, pleasant mood, fair attention and concentration, good memory and recall, and above average intellectual functioning during his examinations. (*Id*. at 976-79). Notably, at his first meeting with Dr. Yu, Plaintiff reported doing well and having no problems with impulse control, and indicated that his medications were controlling his bipolar disorder very well. (*Id*.). Equally important, Dr. Yu gauged Plaintiff's prognosis for his psychiatric

conditions as "good" and opined that Plaintiff's overall functioning prognosis was guarded due to his multiple physical, not mental, health problems.  (*Id*. at 978-79).  During his subsequent visits with Dr. Yu, Plaintiff shared that his mood swings and depression were under "good control" and in "good remission," and mainly complained about his shoulder pain, high cholesterol, triglycerides, and the need to keep up with his exercise routine.  (*Id*. at 980-82).  Therefore, these nonremarkable mental health examination findings do not support the conclusions reached by Dr. Yu that Plaintiff would be limited in his ability to accept criticism from supervisors, work in coordination or proximity to co-workers, interact with the general public, concentrate and perform simple tasks, work an entire day, and be absent from work for more than four days.  Accordingly, the ALJ properly afforded Dr. Yu's opinion limited weight.

Aside from lacking support by their own contemporaneous treatment records, the limitations identified by Dr. Yu and Dr. Spurling were also inconsistent with the findings of the State agency psychological consultant A. Chapman, PsyD. ("Dr. Chapman") and consultative examiner Dennis M. Noia, Ph.D. ("Dr. Noia"), which the ALJ properly afforded significant weight.  (*Id*. at 32, 130-32, 142-45, 738-41).  Even though Dr. Chapman did not personally examine Plaintiff, the ALJ was free to rely on his findings in making the RFC determination as long as Dr. Chapman's opinion was supported by the record. *See Frye ex rel v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given

weight if supported by medical evidence in the record.").  Here, Dr. Chapman opined that Plaintiff did not have significant limitations in carrying out simple or detailed instructions, performing activities within a schedule, sustaining an ordinary routine without special supervision, maintaining regular attendance, working in coordination and proximity to others, getting along with co-workers, and maintaining socially appropriate behavior.  (Dkt. 9 at 130-32; 142-45).  The only limitations he assessed for Plaintiff was his ability to interact appropriately with the general public, accept instructions and respond to supervisors, maintain attention and concentration for extended periods of time, and respond appropriately to changes in the work setting with respect to which he determined Plaintiff was moderately limited.  (*Id.*).  The Court does not find error in the ALJ's reliance of Dr. Chapman's assessment because his findings were based on his review of Plaintiff's treatment records that evidenced Plaintiff's largely normal mental health examinations reported by Dr. Spurling, Dr. Yu, and Dr. Noia, and Plaintiff's reports of significant improvement of his symptoms and activities of daily living. *See Valdes-Ocasio v. Kijakazi*, No. 21-3152, 2023 WL 3573761, at *2 (2d Cir. May 22, 2023) (the ALJ properly afforded substantial weight to the opinion of the state agency non-examining psychologist over the opinion of the examining expert whose opinion was vague as to plaintiff's specific limitations because the non-examining psychologist had program knowledge, provided detailed support for his conclusions that were consistent with the contemporaneous

treatment notes, and were consistent with the evidence that plaintiff's symptoms were stable on medication).

As to Dr. Noia's findings, they were consistent with Dr. Noia's own examination of Plaintiff, as well as the rest of the record, which demonstrated that aside from having some limitations in his ability to interact with others and handle stressful situations, Plaintiff's mental functioning in all other areas was not significantly impaired by his depression, anxiety, or bipolar disorder.  For instance, Plaintiff did not report any significant anxiety-related symptoms or symptoms of a formal thought disorder during Dr. Noia's examination, and admitted having only occasional symptoms of depression and mania that caused him to feel depressed, irritable, fatigued, forgetful, angry, and agitated.  (Dkt. 9 at 739).  Plaintiff's appearance was adequate, and his thought process, memory, as well as his attention and concentration, were coherent, intact, and goal-oriented with good judgment and insight.  (*Id*. at 740).  As a result of the examination, Dr. Noia opined that Plaintiff had moderate limitations in his ability to deal with stress and interact with others, and no limitations in his ability to perform simple and complex tasks, maintain attention and concentration, maintain a schedule, and make appropriate decisions.  (*Id*. at 741).  Even though Plaintiff takes issue with the weight assigned to Dr. Noia's opinion following his single examination, the Court finds this argument without merit as it has been well-established that the ALJ can afford substantial weight to the opinion of a consultative examiner if it is consistent with the record.  *See e.g.*, *Trepanier v. Comm'r of Soc. Sec.*

*Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018) (the RFC finding was supported by substantial evidence where the ALJ "largely relied on the report of a consultative examiner"); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (the report of a consultative psychologist may constitute substantial evidence sufficient to support the ALJ's decision); *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . and the report of a consultative physician may constitute such evidence." (internal citations omitted)).  While Plaintiff is correct that the ALJs have been generally cautioned not to rely on the findings of consultative physicians after a single examination, *see Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013), the Court finds that the opinions of Dr. Noia and Dr. Chapman were not inconsistent with the record, and, as such, were properly relied on by the ALJ.

To be sure, this is not the case where Plaintiff exhibited debilitating mental health symptoms year after year while presenting himself with minimal mental health symptoms during his examinations.  *See Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (plaintiff's normal mental health examinations demonstrated her mental state at the time of the examination and did not consider her symptoms and continuous reports of the lack of motivation, struggles with disorganized thoughts, oral communication, controlling anger, obsessive thoughts, and anxiety that she exhibited year after year outside the brief examinations).  As indicated above, Plaintiff routinely reported

the significant improvement of his symptoms stemming from depression, anxiety, and bipolar disorder during the relevant period to the point when he acknowledged that his symptoms were in remission and successfully self-discontinued Xanax—the most helpful medication that he took during treatment to combat his symptoms.  Plaintiff's treatment was conservative, did not include any mental health hospitalizations, and consisted of medication management only.  *See Penfield v. Colvin*, 563 F. App'x 839, 840 (2d Cir. 2014) (conservative treatment is evidence that can weigh against allegations of disabling symptoms).  Notably, the record indicates that Plaintiff stopped working because of his shoulder injury, and routinely complained about his shoulder being the reason for his irritability and short temper as opposed to his depression, anxiety, and bipolar disorders.  (*Id*. at 821).  Plaintiff often discussed with his treatment providers his desire to return to work, and even applied for a security job at a casino, although he could not complete the application process due to his prior shoulder injury and not his mental health impairments.  (*Id*. at 807, 809, 813, 884).

Despite Plaintiff's significant and well-documented improvement of his mental health symptoms during treatment, the ALJ accounted for the limitations identified by Dr. Noia, Dr. Chapman, and Plaintiff's treating psychiatrists when he limited him to performing simple tasks, occasionally interacting with co-workers and supervisors, having little to no contact with the general public, and maintaining concentration and focus for up to two hours at a time.  *See e.g.*, *Valdes-Ocasio*, 2023 WL 3573761, at *1 (the ALJ properly

found plaintiff capable of performing unskilled work with occasional contact with the public where plaintiff reported difficulties interacting with others and having moderate limitations in concentrating, persisting, carrying out instructions, applying complex directions and instructions, sustaining a routine, maintaining regular attendance, performing activities within a schedule, and regulating emotions at moderate to marked levels); *McGonagle v. Kijakazi*, No. 22-637, 2022 WL 17724696, at *2 (2d Cir. Dec. 16, 2022) (the ALJ's determination that plaintiff could sustain occasional interaction with co-workers and the public was proper when the record demonstrated that plaintiff was very capable of understanding and remembering detailed instructions, appeared attentive and communicative with no signs of hallucinations, delusions, and had logical thinking, intact cognitive functioning, and memory skills); *Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (consultative examiner's findings that plaintiff was only mildly and moderately impaired by his depression and anxiety supported the ALJ's conclusions that he was capable of performing work that involved simple tasks and allowed for a low-stress environment).

In sum, the Court agrees with the ALJ's evaluation of medical opinions of record and his overall formulation of Plaintiff's RFC. *See Guerra*, 778 F. App'x at 77 ("Supported by ample treatment notes, physical examination findings, and [plaintiff's] testimony, the ALJ's assignment of less than controlling weight to [plaintiff's] treating physician's opinions was not in error."). While Plaintiff may disagree with the ALJ's conclusions, the

Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25 (2d Cir. 2018) (internal citations and quotations omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).   Although Plaintiff cites evidence that he believes supports his position that his limitations were more disabling than the ones identified in the RFC, the question before this Court is not whether substantial evidence supported Plaintiff's position, but whether it supported the ALJ's decision.   *See Bennett v. Comm'r of Soc. Sec.*, No. 22-281, 2023 WL 355156, at *3 (2d Cir. Jan. 23, 2023) ("Although there is some evidence in the record that could support [plaintiff's] position, whether there is substantial evidence supporting [plaintiff's] view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.") (emphasis in the original, citation omitted).   Here, the record supports the ALJ's RFC determination and does not demonstrate that any limitations beyond those identified in the RFC were warranted.   Because Plaintiff has presented no medical evidence of functional limitations greater than those found by the ALJ, he has failed to meet his burden to demonstrate that he had a more restrictive RFC than found by the ALJ.  *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (plaintiff failed his duty to prove a more restrictive RFC).  For the

reasons stated above, the Court finds that the RFC determination was supported by substantial evidence. Accordingly, there is no basis for remand or reversal.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 12) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      November 7, 2023
            Rochester, New York

- 21 -